Whenever you're ready. Thank you, Your Honor. May it please the court, my name is Mary Bethick-Oxhoward, and I'm appearing on behalf of Defendants Appellees, or Appellants rather. Plaintiffs brought a putative class action against five different defendants for claims that included breach of three different contracts, and they brought that case in state court in Franklin County, North Carolina. By combining the claims under three different contracts that have three different venue provisions, the plaintiffs violated those venue provisions. They stuck together their claims in a way that they were not permitted to, and in so doing, they expanded the size of the putative class. As a result, defendants were able to remove the case under CAFA as well as under ordinary diversity jurisdiction. Plaintiffs convinced the district court that the venue provision in one of the three contracts waived one defendant's right to remove, and the district court remanded on that basis. But setting aside that plaintiffs were misreading the contract, their argument also ignored below that CAFA allows any one defendant to remove without the consent of all defendants. And because all defendants joined the notice of removal, this case was properly removed. So to talk about the parties and their relationships to one another, the plaintiffs are former residents of assisted living facilities in North Carolina. All three of the named plaintiffs lived in Franklin Manor, which is located in Franklin County. One of the named plaintiffs at the time of removal, Claire Murphy, had also lived in Gabriel Manor, which is located in Johnson County. And plaintiffs tacked on a third facility, the crossings at Steel Creek, located in Mecklenburg County, even though none of the named plaintiffs had ever resided in that facility. They also added two SABRE entities that are related entities to the facilities. So one of them is the holding company, and one provides some back office services to these facilities. And the venue provision at issue is the same wording in each contract, but it produces opposite results. So the wording is, the county in which the facility is located shall be the sole and exclusive venue for any dispute between the parties that arises out of or occurs in connection with this agreement. And because the parties, the defendants' facilities are located in three different counties, as to Franklin Manor, this sets venue in Franklin County, North Carolina. As to Gabriel Manor, it sets venue in Johnson County, North Carolina. And as to the crossings at Steel Creek, it sets venue in Mecklenburg County, North Carolina. The plaintiffs conceded on appeal that CAF's unilateral removal provision governs, and that if any one of the five defendants in this case did not waive its right to remove, that the entire case was properly removed. So the plaintiffs have to establish that none of the five defendants can remove. That Franklin Manor's contract is somehow binding on all five defendants, even the two defendants that have conflicting venue provisions in their own contracts with their residents. And the plaintiffs can't do so. They've looked to case law that is inapposite in support of an argument that related entities can all be bound by one contract. But leaving aside that the case law actually doesn't support that proposition in the first instance, all of those cases deal with the situation where the defendants are sued under one contract. Plaintiffs didn't sue Gabriel Manor or the crossings at Steel Creek for violation of Franklin Manor's contracts. Plaintiffs sued those facilities for violation of their own contracts with their own residents. So plaintiffs are now trying to read the venue provision in Franklin Manor's contract into two other contracts, even though they also brought claims under those contracts. So plaintiffs rely on the Heugel case from the Seventh Circuit in support of this argument. And what Heugel says is that where you sue all of the parties under the same contract and the parties are closely related to the subject matter of the contract such that it became foreseeable that they would all be bound by the contract, then you can enforce the contract against non-signatories. And in that case, Heugel was an individual who owned a couple of corporations. Heugel himself entered into a contract with Lloyds of London that contained a venue provision. And the court held that because the corporations had gotten involved in Heugel's dispute with Lloyds voluntarily, that it became foreseeable that when this dispute resulted in litigation, that the entities would be bound because they had voluntarily become entangled in the contractual relationship. It doesn't hold that if you sue under multiple different contracts, you can do this sort of mixing and matching that plaintiffs are doing here. That you can say, we're going to sue under three contracts, but we want to import the venue provision from one contract into the other two contracts where it doesn't belong. Well, but your solution is that the result of that is a waiver as to all the venue provisions. Why isn't the result simply an excising of the defendants who are not bound by the Franklin County venue provision? I don't think that is actually a possible option, Your Honor. There is some dispute as to whether you can break up a case when it's removed under diversity jurisdiction. And we're not arguing, I mean, because the way the removal provision is written, it talks about actions, not about claims. And we're not arguing for the case to be broken up. We don't need to be able to enforce the contracts here. Gabriel Manor and the crossings at Steel Creek simply need to be able to show that they're not bound by Franklin Manor's contract. So if they're not bound by Franklin Manor's contract, they were free to remove the case to federal court. But they're bound by the venue provisions in their own contracts. But plaintiffs are not attempting to enforce those venue provisions. But you are, aren't you? I don't think we need to enforce those venue provisions in order to be able to remove the case. I think once you're sued in the wrong forum, the plaintiffs have waived the right to enforce those venue provisions because they didn't sue where they would have been required to sue. And at that point, the defendants can remove the case rather than enforcing the venue provisions. I think at that point the defendants had an option. And the option that we picked was, you know, this case had been improperly amalgamated. So we would rather remove it to federal court and proceed in federal court given that the plaintiffs waived the other two venue provisions. I'm getting a little bit confused as to who you think has a burden of proving jurisdictions appropriate or inappropriate in federal court. It's not a question of jurisdiction. If it was a question of jurisdiction, the defendants would have the burden. But venue and jurisdiction, as the Supreme Court has said, are not concepts of the same order. And here, because the plaintiffs are trying to enforce a venue provision to result in remand, they bear the burden. And they have not disputed that in their papers. In any event, I don't think the burden would matter in light of this. You're saying they have to prove that the presence in federal court is inappropriate? They have to prove that all five of the defendants waived their right to remove. So because it's not a question. What's the answer to my question? Because it's venue and not jurisdiction, the burden is on the plaintiffs. Okay. I understand your position. And the plaintiffs just look at affiliation. They say that these entities are all related. And that's sort of the end of their argument as to why the clauses are enforceable. Well, I thought they had an alter ego argument that admittedly wasn't fully developed factually. But if that's true, if they're able to show it, would that be a way to get around the conflicting venue provision? It would not. There's two issues. One is that they did not actually make any showing that the entities were alter egos. The only record evidence that they relied on below is a chart appended to the notice of removal showing the relationships of the entities. But in any event, there are cases where the same defendant, so one entity, is sued under two contracts, where there's a venue provision covering one of the contracts but not the other. And they're district court cases, and they're out of circuit, but they're the only authorities that have addressed the situation to date. One of them is the Jefferson Parish case where the plaintiffs sued under two contracts. One has a venue provision, one does not. And the court held that you can't take the venue provision that waives removal and just extend it to the contract that doesn't contain it. The language in the decision is plaintiffs cannot expand the effect of such a bar on removal to the second contract by filing their claims together. But if they wanted to enforce, in that case, the venue provision that waived removal, they would have had to have separate cases. And that's what plaintiffs are trying to do here. They're trying to say— That doesn't say anything, at least from what you've just described, about whether an alter ego allegation might be sufficient to combine the defendants. Well, it doesn't address alter egos. It addresses the situation where it is literally one defendant. So I don't think there is any case law supporting plaintiffs' position that showing alter egos would be enough. They didn't show it in any event. But there is case law saying that where you have literally one defendant, not simply alter egos, but there is just one party, that when you've got conflicting contractual provisions and you have those claims combined together, that the venue provision in one contract doesn't bar removal. That's particularly the case where we've got independently removable claims under the other contracts. I think it's also important to note that these contracts contain a no third-party beneficiaries clause. So the plaintiffs are trying to read the venue provision into sort of the other contracts, even though the contracts explicitly say that they are only binding on the parties to the contracts. And the plaintiffs then suggest that we can't look to Gabriel Manor or the crossings contracts. And their argument is that this somehow draws in absent putative class members prematurely. But the plaintiffs have to have claims in their own right under these separate contracts in order to be able to sue these defendants. As to Gabriel Manor, Claire Murphy was a named plaintiff at the time of removal, and removability is determined as of the time of removal under Francis v. Allstate. And she had entered into a contract with Gabriel Manor that set venue in Johnson County. And then as to the crossings at Steel Creek, we don't think that it was appropriate for the plaintiffs to bring a claim under that contract because they are not parties to it. None of the named plaintiffs had ever resided in that facility. But once they chose to nonetheless improperly tack on claims, they can't say we're suing you under a contract, but it's not enforceable against us. And that's sort of a mutuality principle that's explored in the American Bankers v. Long case. You can't sue under a contract when it works to your advantage and then repudiate the contract when it works to your disadvantage. I think ultimately the court can avoid dealing with the clause meaning or our arguments about why plaintiffs have waived the clause in Franklin Manor's contract by simply looking to Gabriel Manor and the crossings contract and holding that because those facilities did not waive their right to remove because they didn't agree to be sued in Franklin County Superior Court. CAFA's unilateral remover provision deals with the entire appeal. But in any event, the plaintiffs have the clause meaning wrong here. And the plaintiffs took actions that are inconsistent even with their own reading of the clauses. If plaintiffs were reading the clauses correctly, they combined claims in a way that the clauses forbid. And there's no reading of the clauses that would allow all three of these cases to be brought together. Under our reading of the clause, Gabriel Manor and Franklin Manor could be sued together although only in federal court. But there's no reading of the clauses that permits the crossings at Steel Creek, which is located on the other side of the state, to get roped into the same lawsuit. So by combining their claims this way... Did you say that the first two plaintiffs could only sue in federal court in Franklin County? No. If you wanted to... Because the facilities are located in different counties, there's no way to sue Gabriel Manor and the crossings in state court or Gabriel Manor and Franklin Manor together in state court because there's no county... They're not both in the same county. In federal court, the Eastern District has jurisdiction over... Because Franklin Manor and Gabriel Manor are in counties that both roll up into the same federal district court, you could sue both of them together in federal court under our reading, although not under plaintiff's reading of the contract. But you couldn't sue the Steel Creek defendants? No. It is in a district. And the plaintiffs tacked it onto the lawsuit even though they don't have a named plaintiff who had ever resided in that facility. But once it was there, it's quite clear that it did not waive its right to remove, even under the plaintiff's theory, because there's a federal courthouse within the boundaries of Mecklenburg County. Let me ask you about this. I'm going to go back to this alter ego issue because the district court at least made a passing reference to that in his opinion. You have suggested that there be no basis for overcoming federal jurisdiction based on that premise, but you don't point to a case that suggests that's the case. So why shouldn't we remand this back to the district court to make findings as to whether or not there was an alter ego relationship? Because the plaintiffs didn't make a record that would support such a finding in any event. I couldn't hear you. The plaintiffs did not make a record that would support such a finding in any event. And I don't think the district court, the district court referenced the plaintiff's allegations and then simply concluded that they're related entities. The plaintiffs didn't put in any evidence in the record to suggest anything beyond related entities. Was there any evidence in the state court record about that? I don't believe there was, but the plaintiffs did not rely on the state court record before the district court. The plaintiffs have attempted to do so on appeal, but what they rely on is an order that was entered after the case was removed. I have one question. What about the closely related situation where SABR could foresee, since they control these other entities, that they would likely be bound by the venue clause? I think if plaintiffs had sued simply Franklin Manor and then tacked on the SABR entities, the plaintiffs would have a good argument that the SABR entities would foresee being bound by the Franklin Manor clause as to suits involving Franklin Manor specifically. But once they added suits against Gabriel Manor and the crossings, if SABR is going to be bound by a venue provision, it would be bound by the venue provision in those contracts as to those claims. So they're trying to apply the Franklin Manor clause across all three contracts. And even if SABR is closely related to its subsidiaries, there's no basis for them doing that. Thank you. All right. Mr. Guggenheim. Mr. Guggenheim. May it please the Court. Steve Guggenheim for the Apple East. I think the most important thing the Court needs to recognize is that this is a putative class action. It was filed initially by two residents of Franklin Manor who had contracts that bound them specifically. They were not residents of the crossings. They were not residents of Gabriel Manor. They were residents of Franklin Manor. And as such, they were not obligated or bound by any particular contract that set venue in any place other than Franklin County. SABR is a chain of nursing homes. It's a parent company that controls over 100 nursing homes, assisted living facilities in the United States. One of the primary allegations of the plaintiff and the reason that all the defendants were named is because this is a putative class action where the allegations are based on decisions made by the corporate entity that controls all of the defendants in the case. The allegation of the plaintiff is that the defendants are all alter egos of one another. That there is really no distinct or separate corporation. There is no distinct or separate defendant that can somehow claim that they are not bound by the decisions of their parent. Those are the primary allegations in the case. So in order for the Court to accept the appellant's position, the Court must completely disregard that fact and disregard the implicit findings of the District Court that these defendants are closely related and alter egos of one another. So you seem to be suggesting that, and clearly if those are well-pled allegations in response to a motion to dismiss, that might be the case, but this is a different procedural posture. They've moved to remand the case, or remove the case to the Federal Court, and the question I have is, do you have an obligation to present some evidence on that allegation? Yes, I believe we do, Your Honor. But I think the standard for the judge on that issue is a clearly erroneous standard. But what was the evidence, other than a complaint? Well, the evidence was, this case was originally filed in State Court. Prior to the time of removal, there was a two-day hearing before a State Court judge on an injunction against all the defendants. The State Court made specific findings of fact and conclusions of law relating to the relationship of all of the defendants. But he made those findings of fact after the notice of removal had been filed. Before the notice of removal was filed. I thought he entered the order after the notice. The order was entered in open court. The official order was signed after the removal. Did he make findings of fact in open court? Yes. He made findings of fact, and in fact the trans... On what evidence? And was that record presented to the district court? The record was presented on remand. It's not in, unfortunately, that record is not in the record for the Court of Appeals. And I would agree that the finding, the record is not as complete as we would like it to be on that particular issue. But clearly the judge had to have referred to something to make his findings, which there has not been a demonstration that they were clearly erroneous, of the relationship between the two parties. It's not a great record, Your Honor. Well, I mean, it was just a statement. This is, you know, the remand motion is denied based on the fact that there's an alter ego allegation somewhere in this record. But Judge Boyle doesn't cite anything to support that. He does not, Your Honor. And I would agree with that, that the record is somewhat sparse on that issue. The question is whether or not the judge, under the law, could have considered the findings of the state court in the injunction hearing as part of his determination that the defendants were closely related and alter egos of one another. And what's the evidence that he did? All we have to go on, Your Honor, is what's in the record. I don't know what I would admittedly agree that the record is not perfect. And all we have to go on is what the judge indicated in his order, and we know what was, that that injunction order was part of the record and as part of the Court of Appeals record that was considered by Judge Boyle when making that determination. And in that record of the injunction order, albeit it was signed after the removal, but refuted the court's findings prior to the removal. And one of the issues that was addressed at the lower court was whether that was simply a ministerial act by the state court judge in signing that order. And that was argued specifically at the lower court as to the effectiveness of that injunction. And in the state of North Carolina, the signing of the actual order is a ministerial act. The findings were actually made prior to the removal. And is it your position those findings are binding on the federal court? It's our position that the federal court can consider those findings. I'm not saying that it's the law of the case, but I'm saying that it wasn't clearly erroneous for Judge Boyle to consider the findings of the state court judge as that record became part of the federal record once it was removed. I don't think it was clearly erroneous for the district court judge to consider those findings in making his ruling. There's no indication by the defendants that that would be clearly erroneous for him to do so. Well, let me ask you about the order, Judge Stevens' order, which I have in front of me. As I read this, and I'm looking at it now again, paragraph 23 of his findings of fact, the only finding that he makes with respect to this alter ego allegation is that the court was not presented with factual evidence by defendants that refuted the factual allegations contained in plaintiff's First Amendment complaint. How is that evidence of a... I mean, there's no... it doesn't appear that there's any evidence in this record with respect to alter ego except the plaintiff's allegations in the complaint. Well, the allegations in the complaint, as well as the position that the defendant took in submitting, again, we have evidence that Saber Healthcare owned, was the controlling entity of all of the other defendants. They submitted the defendants in their motion for removal, submitted an actual corporate chart which showed the breakdown of all of these entities and how they all are related. Well, the control by itself just isn't enough. Well, what's interesting is Judge Posner in the Adams v. Raintree case did probably one of the most extensive analysis of whether or not in a forum selection clause that closely related entities can be bound, non-parties to a contract can be bound. And in the Adams case, Judge Posner went through and explained numerous circumstances as to why a non-party to an agreement can be bound. He talked about affiliation being one of the reasons. Judge Posner talked about alter ego. He talked about piercing the corporate veil. And in many of the instances in the Adams case, the court referred to allegations of the plaintiff. Judge Posner's opinion does not really set forth the actual evidence that was available before the district court in making that determination, but that is probably one of the most precise analyses of how that determination is made by a court in reaching a conclusion, a plenary conclusion, as to why particular defendants through either their affiliation, through mutuality, through piercing the corporate veil, and through alter ego should be bound by a forum selection clause. Mr. Gugin, let me interrupt you just a second. I want to go back to Judge Diaz's question to you. My understanding was in state court, the judge in state court made it clear his order findings weren't going to be effective until he signed the written order. Isn't that right? The effect of the injunction itself would not go into effect. Actually, what he said in the order was that it was ineffective because the case had been removed. The question is whether or not his findings could have been considered by the district court. Let me just read you what he said, and then you can explain to me. Maybe it's a different context than I understand. He said, come up with an order that memorializes that, and I'm looking at it and either sign it or modify it as I think is appropriate, and I'll make it effective when the order is signed. Correct. I think what he's saying is that the effect of the injunction, meaning that the injunction would take effect when it was referring to the injunction. Yes, Your Honor. Not the other findings of fact. Yes, Your Honor. I think he's referring to the injunction itself. Okay. Now, while I've got you interrupted, I'm going to switch gears on you. I've got another question. As I understood your opponent's position, she was saying that when a case is removed, the defendant removing it has the burden of proving that federal jurisdiction is appropriate, but that you as a plaintiff have the burden of proving removal is not proper. Do you agree with that allocation of burdens that she represented to me? I do not, Your Honor. I think the burden of establishing removal and entitlement to removal is on the defendant.  in any doubts are resolved in favor of remand. I think it's the defendant's burden to prove that they are entitled to removal. The only way they're entitled to remove is if they did not waive the right to remove via the contract. The court, the defendants also cite to what we believe is the improper standard of waiver. They claim that the burden is to show that there was a clear and unequivocal waiver of the right to remove. That is not the law. And, in fact, in the Foster case, the Third Circuit went through a very detailed analysis and, in fact, discussed the cases that the defendants claim support their position that that is the standard and specifically noted in a very detailed analysis that that's not the standard for establishing waiver. And, in fact, all that's required is for the courts to interpret the contract. There is no requirement that the waiver be established through clear and unequivocal evidence. That's not the proper burden. That may be the proper burden for a litigation-related waiver, as the court in Foster noted, but not for a contractual waiver. The issue as it applies to a contractual waiver and the burden as to a contractual waiver is merely contract interpretation. That's a legal analysis that the district court and this court must engage in at this moment. That's the only standard that applies. Does North Carolina use the verified complaint process? Not for the allegations of this particular complaint, Your Honor, no. There was no need for the plaintiffs to submit a verified complaint. So I think the whole, before we get, even can get to the analysis suggested by the appellants, the court must reach a conclusion initially that the district court either did not have enough evidence to make a determination that the parties, for purposes of a remand only, not a factual, legal, conclusive finding that's the law of the case. That's not what the judge was required to do. He's just making a plenary decision as to whether or not there is sufficient evidence to determine for purposes of remand only that their defendants were alter egos or affiliates of one another. That decision by the district court judge is not something that the plaintiffs could later rely upon for establishing liability of the defendants down the road. It's only a decision that's made for purposes of deciding whether or not this case can be removed or whether or not the contract between the plaintiffs and Franklin Manor also apply to the other related defendants and whether they are bound by these agreements. We have to remember that they drafted these contracts. The plaintiffs in this case did not have any role or bargaining position in drafting the forum selection clauses that are applicable to this case. If the defendants did not want to contemplate that they would be bound in a particular venue or forum, they could have very easily drafted these agreements differently. It's a sophisticated company. There's more than 100 of these facilities. If they wanted to preclude the filing in state courts, if they wanted to provide them the ability to remove the case to federal court, either A, they could have not included a forum selection clause, or B, drafted the forum selection clause differently than they did. They drafted it. They knew when they drafted it, where they may be subject to being sued. If they wanted to do something differently, it was up to them, not up to a party who had absolutely no role in negotiating where a case may be filed. Mr. Guggenheim, let me ask you about this closely related test. Let's put aside the alter ego allegation for the moment. What is your understanding of what's required to be shown? You seem to be suggesting the mere fact that the nursing home entities had a relationship with the subsidiary companies, the holding company and the other entity, that that by itself is enough. Is that your position? Well, I think that what the court can do that's instructive is to review Judge Posner's decision because it goes into a very detailed analysis as to, A, the reasons that we have a law that would allow non-parties to be bound to a forum selection clause. And he discusses a number of different situations in which that would apply. In fact, in the Adams case, one of the parties that was held to be bound by the forum selection clause had absolutely no relationship or affiliation with the party who signed the contract in the case. And in fact, in the Adams case, one of the defendants that Judge Posner concluded would be bound by the forum selection clause, that party was alleged to have conspired with an affiliated company of the company that actually drafted the forum selection clause. And because of the fact that this company was alleged by the plaintiff to have conspired with one of the affiliate companies of the company that actually signed the contract, Judge Posner concluded that because of the mere allegations of that relationship, that that company should have expected to have been bound. But in the absence of that, just the mere sort of corporate alignment and structure of a holding company and a parent company, is that enough? I don't think that's enough, Your Honor. I think what is important, as Judge Posner noted, is whether a non-party to the contract may be bound by the forum selection clause depend on whether the non-party is closely related to the suit. So I think you have to look at the allegations of the complaint. So I guess then my question is, why would it be foreseeable that the Steel Creek facility, which is a separate entity, would foresee being hailed into court into Franklin County? Because of the allegations of the suit, and the allegations of the suit is that SABRE, the corporate entity that the plaintiffs controlled and admittedly was the 100% shareholder of all of the other facilities, the allegation is that this entity set minimum staffing standards for all of its facilities that SABRE knew or should have known would be inadequate to comply with all of its contractual obligations to all of the residents of its facilities. The contracts for each of these facilities were exactly the same. There is no difference in any word of any of the facilities. So the position is, if, for example, we had had a, and again, the named plaintiffs in the case are not residents of crossings. It's a putative class action. These named plaintiffs couldn't have taken the crossings of Steel Creek agreement and filed a lawsuit in Mecklenburg County because it's just a putative class. They only signed the agreements with Franklin Manor. The allegation, though, is that SABRE, as the controlling entity, knew or should have known that it would be bound, if we had plaintiffs that were plaintiffs of each of the facilities, that they could have been sued in any one of those venues. SABRE drafted the agreement. They knew when they drafted the agreement that there was a forum selection clause in any one of those agreements that they were bound to. If they were sued in a putative class action and had class representatives from each of the facilities, they had to have known that they could be sued in any of the selected venues that they chose. But for them to come to court now and to ask the court to ignore the fact that they recognized in advance of this lawsuit ever occurring and when they drafted the forum selection clauses, that based on their drafting of the forum selection clauses, they may be subject to venue in any of the venues identified in the forum selection clauses is disingenuous. And for those reasons, Your Honor, we ask that the court affirm the remand of this case. Thank you. Thank you. Ms. Hickox-Howard, you have some time in reply. I think it's important to circle back to the basic CAFA principle that's at issue here. The removal of the action is valid if any one defendant can remove the case. And plaintiffs are now trying to daisy chain two orders together, one from state court, one from federal court, into an alter ego finding. But neither of those orders actually make such a finding. The state court didn't find it. Federal court didn't find it. And there's no evidence in either record to support it, and there's certainly no evidence before this court on appeal to support it. Judge Boyle didn't look to the state court record. Judge Boyle simply looked to the plaintiff's allegations and then said, what's in the record shows that you're related entities, in footnote two of his order. But more importantly, the plaintiffs conceded at oral argument that it's not enough to show that there's a holding company over all of these companies. And that is the only record they made in support of their alter ego argument. They did not point to any other extrinsic evidence, and they did not actually plead in the complaint even sufficient allegations to support such a finding. They simply say on information and belief there's commingling of funds. There's no support with facts beyond just the naked assertion that these entities are alter egos of one another. What the state court found was that there was a relationship between the entities, and we don't dispute that, but it's not sufficient. And Adams v. Raintree, the case upon which plaintiffs are now heavily relying, shows why that's not sufficient. It actually directly holds that that's not sufficient. Simply being related is not enough for parties to be bound by other parties' contracts. And that's in the context of where you only have one contract. I think it's important to note that Adams v. Raintree also does not simply rely on plaintiffs' allegations in the complaint except against the plaintiffs. So it allowed a nonsignatory to a contract defendant to invoke the plaintiff's allegations against the plaintiffs. It did not say that facts would not be sufficient, that pleadings would be sufficient, and no evidence would be required if the situation were reversed and the plaintiffs were trying to invoke their own allegations against a nonsignatory. Plaintiffs also talked about the burden for removal and remand. And again, they're confusing jurisdiction and venue. We had the burden of establishing that federal jurisdiction existed. But as to remand for a non-jurisdictional reason, and venue is a non-jurisdictional reason, the burden is on the plaintiffs. What that burden is, there's a circuit split as to whether it requires clear and unequivocal waiver or whether the burden is lower. There's not a circuit split as to where the burden falls. And I don't think, regardless of where this court comes out as to what the burden is, it won't matter in this case because you've got the conflicting contracts. Would you say that again, because what? Because you've got the conflicting contracts in any event. Whatever the burden is, plaintiffs can't meet it. And I think it's also important to note that the plaintiffs kept coming back to the idea that Sabre could have drafted this clause differently to prevent this lawsuit. But Sabre did draft the clauses specifically to prevent the aggregation of claims the way that plaintiffs aggregated the claims. Once plaintiffs violated the contracts, the entities had the option of enforcing the contracts or removing, and we went with removal. But once plaintiffs stuck together the cases in violation of those clauses, and I think it's important to note that they're looking to absent class members, but the plaintiffs brought claims purportedly in their own right against all three facilities. One of the named plaintiffs had actually signed an agreement with Gabriel Manor. And once you've got the three conflicting clauses in play, the defendants that have venue provisions that did not set venue in Franklin County, the other two facility defendants, Gabriel Manor and the Crossings, were each free to unilaterally remove this case under CAFA. So this is exactly the sort of situation that CAFA is designed to deal with. It was designed so that when you stick together cases into a class action large enough to trigger federal jurisdiction, it should proceed in federal court. And that's where this case should return. Thank you. Thank you. Keep going. Keep going. Okay. All right, we'll come down to Greek Council and then go into our last case.
judges: William B. Traxler, Jr., Albert Diaz, Henry F. Floyd